OPINION OF THE COURT
Sara P. Schechter, J.
Before the court is a petition to extend placement of Daniel M., who will be eight years old this month. The extension itself is uncontested. The matter in dispute is the service plan for the child. The Law Guardian moves for an order directing that Daniel be placed in the certified foster home of P. and J. S. of Rock Fall, Connecticut, and for a further order that the Commissioner of Social Services pay for four hours a day of skilled nursing care over and above the foster care rate. The Commissioner opposes on the grounds that the payment for nursing care would require an exception to policy and that the child’s needs can be adequately met in another setting.
QUESTION PRESENTED
The question presented is whether the Family Court may order the Commissioner of Social Services to place a child in a particular foster home for which exception-to-policy payments would be required, where the Commissioner has determined that the child’s needs can be met adequately in another setting?
FACTS
Daniel has'been in foster care his entire life. His parents abandoned him at birth and have had no contact with him or with his caretakers over the years of his placement. The child suffers a chromosome anomaly, Trisomy 13, as a result of which he has a seizure disorder, profound mental retardation, blindness, partial hearing loss and an inability to take any nutrition by mouth. Throughout his placement he has resided in The New Britten Memorial Hospital in New Britten, Connecticut. Mrs. S., who now wishes to become Daniel’s foster mother, is one of his nurses at this facility. Mr. S. is also a nurse. They are certified by the Commissioner of Social Services of New York City as foster parents, and they are already providing foster care to another child who also suffers from Trisomy 13. *137 In view of the severity of Daniel’s medical condition, Mr. and Mrs. S. believe that they will only be able to provide foster care for him if four hours a day of skilled nursing care, beyond their own services, are provided.
The Commissioner opposes this plan and proposes instead to bring Daniel back to New York where placement would be sought for him under the auspices of the Office of Mental Retardation and Developmental Disabilities (hereinafter OMRDD). In such a situation, OMRDD does not assume custody of the child, but rather acts as a care provider for the Commissioner of Social Services, which retains planning responsibility for the child.
Prior to the Law Guardian’s application to have Daniel placed with Mr. and Mrs. S., the Commissioner’s attention to planning for this child had been intermittent at best. Daniel was placed with the Commissioner in 1987 as a neglected child, and his placement was thereafter extended until 1991 when the Commissioner failed to file a timely extension petition, thereby causing the placement to lapse. Two years later, when the oversight was noticed, a new neglect petition was brought, and the child was again placed with the Commissioner. But for the vigilance of the Law Guardian, this placement would also have lapsed, but it was preserved by the Law Guardian’s order to show cause with a temporary extension. The child has never had a foster home placement, and the Commissioner has taken no steps to free him for adoption, although on April 8, 1993 the Commissioner was ordered to file a termination of parental rights proceeding within 90 days.
SCOPE OF THE FAMILY COURT’S AUTHORITY
Section 1017 (2) (b), added to the Family Court Act in 1989, authorizes the Family Court to direct that a child be placed in a specific certified foster home: "The court in its discretion may direct that such commissioner have the child reside in a specific certified foster home where the court determines that such placement is in furtherance of the child’s best interests.” The Commissioner does not dispute that the court has such authority, but contends that such a direction in this case would not be in Daniel’s best interests and that it would intrude into the Commissioner’s area of responsibility.
The Commissioner’s argument as to Daniel’s best interest rests on the premise that Daniel will not be adopted and that he will require adult custodial care, which will have to be provided through OMRDD. Although it is unlikely that this *138 child’s medical condition will improve, his disabilities do not preclude adoption. The primary impediments to adoption at this time are the Commissioner’s failure to initiate proceedings to free the child for adoption and to move him into a foster home. It ill behooves the Commissioner to thus limit the child’s options and then to argue that he is, accordingly, doomed to a life in institutional care.
Even if the premise that the child will ultimately require adult custodial care is borne out, that is not sufficient reason to deprive him of the opportunity to enjoy an available foster home now. The Commissioner argues that in order to qualify for adult services within the OMRDD system, a child must be placed with OMRDD two to three years before becoming an adult. As Daniel is now eight years old, he could remain in foster care with Mr. and Mrs. S. for eight years before needing to be moved into the OMRDD system. If he is moved into the OMRDD system now, he will be placed in an institutional setting until OMRDD develops a service plan for him and attempts to find a suitable foster home, a process which certainly will further delay his placement in a foster home, if indeed any such foster home is ever found at all. To prolong this child’s stay in institutional care when a foster home is available to him would constitute a clear violation of Federal mandates set forth in the Social Security Act under which a "case review system” must be established to assure that "each child has a case plan designed to achieve placement in the least restrictive (most family like) setting available and in close proximity to the parents’ home, consistent with the best interest and special needs of the child.” (42 USC § 675 [5] [A].)
The Federal mandates are implemented in New York by regulations promulgated by the New York State Department of Social Services. The regulations relevant to this case are:
"The most appropriate level of placement for each child will always be considered to be the least restrictive and most homelike setting in which the child can be maintained safely and receive all services specified in his or her service plan.” (18 NYCRR 430.11 [d] [1].)
"The placement of a child in a foster family home or an agency boarding home shall be considered placement at an appropriate level for the purposes of this section, if the services required in the most recent assessment and service plan required by the uniform case record are available to the child as part of the placement.” (18 NYCRR 430.11 [d] [2].)
"The placement of a child in [an OMRDD facility] shall be considered placement at an appropriate level of care * * * *139 only if the child meets the criteria for admission to a facility operated or supervised by [OMRDD].”(18 NYCRR 430.11 [d] [6] [il.)
"Notwithstanding any other provision of this section, a placement shall not be subject to denial of reimbursement due to inappropriate placement if a court has ordered that the child be placed in that particular setting.” (18 NYCRR 430.11 [e].) Reading these sections together, it is apparent that a foster home is preferable to institutional care and that, while an OMRDD placement would probably be allowable in Daniel’s case, it is no way mandated or preferred when a suitable Child Welfare Administration (CWA) certified foster home is available.
The Commissioner’s contention that in granting the Law Guardian’s motion the court would be impermissibly intruding into the Commissioner’s area of responsibility rests upon a misplaced reliance on the decision in Matter of Commissioner of Social Servs. v Rapp (127 Misc 2d 835 [Fam Ct, Queens County 1985]) and the cases cited therein. Although that decision accurately reflected the law as it existed at that time, the Family Court Act has been amended subsequently to expand the court’s power to override the Commissioner’s planning determinations and to order services in furtherance of the plan the court has established for a child within the court’s jurisdiction. One such amendment was Family Court Act § 1017, discussed above, and another, in 1987, added section 1015-a to the Family Court Act. This section states, in relevant part: "In any proceeding under this article, the court may order a social services official to provide or arrange for the provision of services or assistance to the child and his or her family to facilitate the protection of the child, the rehabilitation of the family and, as appropriate, the discharge of the child from foster care. Such order shall not include the provision of any service or assistance to the child and his or her family which is not authorized or required to be made available pursuant to the comprehensive annual services program plan then in effect.”
Since Mr. and Mrs. S. cannot provide foster care for Daniel unless the Commissioner also funds four hours per day of skilled nursing care, we must now address the question whether Family Court Act § 1015-a empowers the court to order such payment. The Commissioner contends that the payment for skilled nursing care would require an "exception to policy”. The policy in question was never presented to the court, although written memoranda were submitted in this *140 case, and neither was the court ever informed what criteria are employed in deciding whether to grant an exception. Assuming that such a policy exists, however, it cannot be employed to evade the Commissioner’s duty to place this child in the least restrictive setting consistent with his needs. Indeed, the undisputed availability of an "exception to policy” mechanism indicates that the policy must be subordinate to the Commissioner’s statutory and regulatory obligations.
Although payment for nursing care is not specifically mentioned in the 1991-1993 consolidated services plan, the last multiyear plan the Human Resources Administration issued, both that plan and the 1994 implementation report listed as priority 1 for the CWA, "Recruit Foster Boarding Homes for Hard-to-Place Children, Including Those 10 Years of Age and Older and Those with Special Medical and Developmental Needs. ” (Emphasis added.) Payment for necessary nursing services for Daniel would, therefore, appear to be entirely appropriate under the plan.
As placement in the certified foster home of Mr. and Mrs. S., with provision of four hours of skilled nursing care per day, would promote the best interests of Daniel M. and would be consistent with applicable laws and regulations, the Law Guardian’s motion is granted, and the Commissioner is ordered to so place the child and pay for the required nursing care.