OPINION OF THE COURT
Timothy J. Lawliss, J.
Angel, the subject child of this proceeding, is currently placed with the Commissioner of the Clinton County Department of Social Services pursuant to articles 10 and 10-A of the Family Court Act. At the last permanency hearing conducted on November 28, 2012, the court found that Angel’s father, Thomas P, had been diagnosed with alcohol dependence, cannabis dependence, opioid dependence and hallucinogen abuse and there were ongoing concerns regarding his abuse of marijuana, K2, alcohol and salvia. During the hearing Mr. E strongly asserted that he wanted to work for the return of his child and, in order to prove his future sobriety, Mr. E asked that a SCRAM device be installed on his person.[1] The court granted Mr. P’s request and directed that the Clinton County Department of Social Services install a SCRAM device for Mr. E no later than December 3, 2012.
By order to show cause dated November 29, 2012, the Clinton County Department of Social Services moved for an order *266 In support of its motion, the Department submitted the affirmation of Attorney Van Crockett dated November 29, 2012 and the correspondence of Attorney Van Crockett dated January 4, 2013. Essentially the Department argues that it only possesses 20 SCRAM devices, that all 20 SCRAM devices are being used and that the court does not have the authority to order them to obtain a twenty-first SCRAM device for Mr. E’s use. Therefore, the Department argues that the requirement that the Department provide a SCRAM device for Mr. E should be delayed until one of their 20 SCRAM devices is available.
*265 “to modify the provision of the Permanency Hearing Order that directs that no later than December 3, 2012, the Clinton County Department of Social Services shall ensure that a SCRAM device has been installed and is utilized by Thomas [E] to provide that within 24 hours of its availability, the Department of Social Services shall ensure that the SCRAM device shall be installed and is utilized by Thomas [P].”
*266 Before analyzing the basis of the Department’s request, it is important to note that the Department does not dispute any of the following. Mr. E has a significant problem with alcohol. The SCRAM device is an effective method of monitoring Mr. E’s alcohol consumption. The Department is obligated to make reasonable efforts to return the child to her home. Fart of reasonable efforts should include services designed to address Mr. E’s alcohol consumption. Other than the argument discussed below, there is no impediment, financial or otherwise, to the Department obtaining an additional SCRAM device for Mr. E’s use.
It appears that the Department’s argument relies entirely upon Family Court Act § 1015-a, which in pertinent part indicates that a family court order directing a social services official to arrange for services “shall not include the provision of any service or assistance to the child and his or her family which is not authorized or required to be made available pursuant to the comprehensive annual services program plan then in effect.” Although not expressly stated, it also appears that the Department is asserting that the Clinton County Child and Family Services Flan in effect from January 1, 2012 through December 31, 2013 (hereinafter the plan) that is attached to their attorney’s affirmation is the “comprehensive annual services program plan” referenced in Family Court Act § 1015-a.
The plan is 83 pages long with approximately 24 pages of attachments. One section of the plan is titled “Child and Family Services Flan Frogram Narrative” and contains several subsections titled “Outcome Framework/Mission/Vision,” “Flanning Frocess,” “Self Assessment,” “Friority Frogram Areas,” “Outcomes,” “Strategies to Achieve Outcomes,” “Plan Monitoring,” and “Financial Process.” The introduction to the subsection titled “Strategies to Achieve Outcomes” reads as follows:
“Describe strategies that will be implemented to *267 achieve the identified outcomes, including those strategies that support your Child and Family Services PIP outcomes. Each strategy should include the timeframe for completion and a designation of what agency (ies) or department (s) is/are responsible for implementation. Explain how OCFSadministered funding supports achievement of outcomes. Strategies must be related to the achievement of outcomes. If the county receives RHYA state aid, the strategies must provide for the coordination of all available county resources for those populations.”
By this court’s count, the Department then lists 61 strategies. Contrary to the Department’s own introduction to this list of strategies, the court does not see any time frame for the completion of any of the identified strategies in this section of the plan. Based upon this court’s review, only four of the 61 strategies have any type of numerical limit to the amount of services to be provided. One of those four numerical limitations involves a “strategy” related to the SCRAM device, which reads as follows: “Maintain up to 20 SCRAM bracelets (purchased in 2009) for the expressed purpose of preventing out of home placement in Article 10 proceedings or facilitating return home from foster care for families in Article 10 proceedings in which parents’ alcohol use is a safety factor.” The Department relies upon this language to claim that the court lacks the authority to order the Department to provide a SCRAM device to Mr. E because the 20 SCRAM devices that they possess are all being utilized.[2]
Nowhere in the supporting affirmation nor in the plan does the Department state that they could not maintain more than 20 SCRAM bracelets, if they so desired. Nowhere in the supporting affirmation nor in the plan does the Department provide any reason as to why they are choosing to only maintain 20 SCRAM bracelets. Without any reason advanced, the court can only conclude that the number 20 is an arbitrary limit. There is no rational basis to deny Angel’s family the services available in this county to other similarly situated families.
Other family courts have held that the Family Court has the authority to direct that the Department of Social Services *268 provide a specific service, if the specific service at issue is consistent with the purposes of the county’s comprehensive annual service plan, even when the specific service was not expressly enumerated in the county’s comprehensive annual service plan. For example, in Matter of Daniel M. (166 Misc 2d 135 [Fam Ct, NY County 1995]), the court held that it had the authority to direct that the Department of Social Services provide for in-home nursing care for a disabled child so that the child’s prospective foster parents could accept the child into their home, even though payment for nursing care was not specifically mentioned in the county’s comprehensive annual service plan. The court found that the county’s plan listed as a priority “Recruit Foster Boarding Homes for Hard-to-Place Children, Including Those 10 Years of Age and Older and Those with Special Medical and Developmental Needs.” (Id. at 140 [emphasis omitted].) Finding that the providing of nursing care was consistent with that stated priority, the court ordered the nursing care over the objection of the Department of Social Services.
Similarly, in Matter of Andrea D. (25 Misc 3d 503 [Fam Ct, Monroe County 2009]), the Family Court ordered the Department of Social Services to provide the subject child with a copy of her birth certificate and assistance with locating and funding an appropriate driver’s education class. In making this directive, the court acknowledged that the county’s child and family services plan did not specifically authorize driver education classes for youth. It found that the direction to provide these services was permissible since the Department’s plan emphasized self-sufficiency as one of its four major goals and that obtaining a driver’s license was a key component to self-sufficiency.
In the case at bar, the plan states that among the desired outcomes for both child protective services and foster care services is for “families [to] have enhanced capacity to provide for their children’s needs.”[3] The plan also identifies as one of its priorities the “strengthening of families.”[4] Assisting Mr. E to address his substance abuse issues by providing him with a SCRAM device certainly is consistent with the plan’s specified priorities and desired outcomes.
Finally, and most importantly, the Department of Social Services has a number of statutory obligations with respect to children *269 and families in Clinton County. Many of these statutory obligations are created by the removal of a child from her home as a result of abuse or neglect. For example, after removal, the Department must make reasonable efforts to eliminate the need for placement of the child and to enable the child to safely return to her home.[5] (See Matter of Cloey S. [Anthony T.], 99 AD3d 1080 [3d Dept 2012].) The Department cannot avoid its statutory obligations to children and families by placing arbitrary numerical limitations in the county’s comprehensive annual service plan. For example, the county could not state that it was only going to provide foster homes for up to 50 children at any given time, and then after 50 children are placed in foster homes, refuse to provide another foster home placement regardless of a child’s needs. The county could not state that it was only going to provide substance abuse counseling for up to 10 individuals at any given time, and then refuse to provide substance abuse counseling, if needed, to the eleventh parent whose child had been placed. The county must fulfill its statutory obligations to all children and families that meet the statutory criteria. The court will not permit the county to avoid its statutory obligations by putting arbitrary limits on the number of units of service in their comprehensive service plan.
Accordingly, it is hereby ordered, that motion No. 3 is hereby denied, and it is further ordered, that all temporary provisions contained in this court’s order to show cause dated November 29, 2012 are hereby terminated.

. A SCRAM device is system designed to monitor an individual’s consumption of alcohol. It consists of an ankle bracelet that gathers information and transfers that information to a computer for purposes of analysis. Essentially the role of a SCRAM device is to provide the equivalence of ongoing breathalyzers. The fundamental difference between a breathalyzer and a SCRAM is that a breathalyzer analyzes the gas within an individual’s lungs, while the SCRAM analyzes the gas leaving an individual’s skin.

. For purposes of this analysis the court accepts the Department’s claim that 20 SCRAMs are now being used by the Department; however, it is unlikely that the Department’s attorney that signed the affirmation has personal knowledge as to the use of all 20 SCRAM devices and said attorney fails to provide a basis for his assertion that all 20 SCRAM devices are in use.

. See plan at 27.

. See plan at 26.

. Unless the child is freed for adoption or there has been a judicial determination that such efforts are not required pursuant to Family Court Act § 1039-b. (Family Ct Act § 1089 [d] [2] [iii] [A].)